The next case this morning is 522-0008 People v. Thomas Boone. Arguing for the defendant and appellant is Anna Carlozzi. Arguing for the state appellee is Lynn Harrington. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please know only the clerk is permitted to record these proceedings.  Good morning. Good morning, Your Honor. Good morning. Before we begin, I want to state for the record that we've had some motion practice that preceded this case. On the 14th of September, there was filed by the state, I believe, a motion to cite additional authority. And this court granted that motion and allowed the defendant 14 days to file a response. The defendant filed that response, but also filed yesterday, on the 19th or the 18th, a motion to cite additional authority. So the defendant filed its own motion, and the state immediately responded, even though that motion had not been granted. This court, while we appreciate citation to very recent case law that should be brought to our attention after the briefing, does not look with favor upon this last-minute motion filing. That being said, because the case that was brought to our attention was just recently filed within the last couple of weeks, we're going to grant the motion by the defendant and allow the state's response to that motion that was filed. And I'm assuming that that would conclude the motion traffic on this case. Is that correct? Yes, thank you, Your Honor. Okay. All right. Ms. Carlozzi, you represent the defendant in this case. Would you like to proceed? Yes. All right. You may do so when ready. Okay. My name is Anna Carlozzi with the Office of the State Appellate Defender on behalf of Thomas Boone. May it please the court. Mr. Boone raised five issues in this case. I plan to briefly discuss the first issue, then transition to the second issue, but I'm happy to answer questions about any of the issues. The state failed to prove that Mr. Boone had the intent to kill necessary to sustain a conviction for attempt murder. Other than the mere fact of the shooting itself, nothing in the record suggests that Mr. Boone had the intent to kill anyone. As the first district just found in the recent unpublished decision in People v. Jackson, the act of shooting at someone combined with the surrounding circumstances can create an inference of an intent to kill, but this inference is not automatic. The state here argues that it established an intent to kill evidence that Mr. Boone fired a gun, that three bullets hit Paris Jelks, and that her injuries were life-threatening. But on their own, these facts cannot establish an intent to kill. Aggravated discharge of a firearm covers firing a gun in the direction of another. The aggravated battery statute in general contemplates situations involving great bodily harm and specifically covers discharging a firearm and causing injury to another. In People v. Mitchell, our Supreme Court held that not every assault involving serious bodily injury constitutes attempted murder. The surrounding circumstances that this court must look to are not limited to the very specific facts of the offense itself. It's supposed to look at all of the circumstances surrounding the incident. And here, there's evidence that Mr. Boone was attempting to talk to Jelks and de-escalate the conflict. And this certainly does not establish that Mr. Boone had an intent to kill. Furthermore, the state presented no evidence about how Mr. Boone handled the gun, what kind of gun he had, the distance or angles between Mr. Boone and the porch. Nor did it provide any evidence to establish a motive, which in turn could have perhaps established an intent to kill. While all of those things are not required to be shown in an attempt murder case, these are all relevant aspects of the surrounding circumstances that this court and other courts have found are relevant to establish an intent to kill. In this case, there is no evidence about any of those things. The only evidence is that Mr. Boone seemed to be the one person trying to talk the situation out and to de-escalate the conflict. And that does not gel with an intent to kill. But he shot three times at the same person, didn't he? He did, but again, the state presented no evidence about what kind of gun Mr. Boone had. Do you need the kind of gun? I mean, does it matter whether it's an AK-47 or a .38 when you have him shooting three times and hitting the same person? I mean, I think that it can matter because if someone has a fully automatic weapon, it would be very easy to, you know, shoot three times without maybe perhaps intending to if your finger stays on the trigger for a little bit. Could we back up a little bit? Could you stop for a minute? Yes. You mean a military automatic weapon where if you keep your finger on the trigger to fire, but if it's not a military weapon, you have to pull the trigger each time for it to fire. In this case, didn't all three shots end up in a cluster very close to each other? Yes. So you're saying he had a military weapon and that's what you testified? That's what you just said. They pulled the trigger and it fired three shots. Was it a military weapon? I'm sorry, I apologize if it came across that I'm saying that this is what happened. I'm saying that because there was no evidence presented about the type of gun, there is an explanation for why there were three bullets very closely together. Is there any evidence that he pulled the trigger three times or one time? There is no evidence about how many times he pulled the trigger. So then what you said is incorrect. I'm sorry? Well, you said he just pulled the trigger once and it fired three shots. So that's the military weapon. Yes, I'm sorry. Again, I'm saying that we don't know if that's what happened. So what you said, you say you don't know. Yes, that is something that is possible. But because the state did not introduce any evidence about the kind of gun, we don't know. The only person who testified to actually seeing Mr. Boone pull the trigger was Paris Jelks' mother, and she indicated that she only saw him pull the trigger once. But she was also not specifically asked how many times specifically he pulled the trigger. I believe she was only asked how many bullets she believed were fired, how many times the gun, yeah, how many bullets were fired. That was found out also that they were in a close cluster when they did the autopsy. But I mean, when they checked into where they landed. Yes, when Jelks was treated, the doctor testified that the bullets were spaced very closely together, which, again, could indicate that an automatic weapon could have been used. Because if they're spaced very closely together, that would indicate, you know, that they happened in very rapid succession. So fully automatic is what you're saying versus semi-automatic. Yes, exactly. And because the state didn't present any evidence about what kind of weapon Mr. Boone had, we can't speculate that these three bullets that hit her by themselves indicate an intent to kill. Looking at all of the circumstances surrounding the incident at Paris Jelks' house, the state failed to prove beyond a reasonable doubt that Mr. Boone had the specific intent to kill Paris Jelks or anyone else. If this court has no other questions about intent, I'd like to move on to waiver of counsel. Yeah, would you move on to that, please? Yes. A criminal defendant has two options regarding their representation. They can either be represented by a licensed attorney or they can represent themselves. If a defendant wants to represent himself, the trial court must inform the defendant of and make sure he understands the nature of the charges, the sentencing range, and that he has a constitutional right to an attorney. In this case, the court failed to ensure that Mr. Boone's waiver of his right to an attorney was knowing and voluntary. And then after his waiver, there were at least three instances where the court should have revisited the 401 admonishments. When a special appearance was filed on Mr. Boone's behalf, when a treason and genocide complaint was filed, and when Mr. Boone filed post-sentencing motions titled Motions to Appeal. Initially, the court failed to ensure that Mr. Boone's waiver was knowing and intelligent because each time the court provided Mr. Boone with an admonishment, he said, I overstand, I overstand. But the court here never asked Mr. Boone to clarify or explain what he meant by overstand. And so without that kind of clarification, there's no way of knowing whether Mr. Boone's use of overstand is equivalent to understand or if it meant something else. Also never inquired into the voluntariness of Mr. Boone's waiver. Then later, when a third party filed a special appearance on Mr. Boone's behalf, calling herself Mr. Boone's specific power of attorney in fact, and claiming that she'd been appointed to file on Mr. Boone's behalf. The court did not ask Mr. Boone who this person was or her involvement in his case, nor did the court inform Mr. Boone that an non-attorney who had no authority to file documents on his behalf, that as a non-attorney, she had no authority to do that. Notably, this special appearance was file stamped and the docket reflects that such an appearance was filed. When Sharon Renee Lloyd next filed documents on Mr. Boone's behalf, he had already been found guilty of attempted murder and unlawful use of a weapon by a felon. In this time, the court acknowledged that she had filed the treason and genocide complaint on his behalf, but said that it would not consider it because she was not a licensed attorney. While disregarding the complaint was absolutely the correct thing to do here, failing to inquire into who this woman was and the extent of her involvement in this case was not. This is particularly true when on that same day, Mr. Boone later said that Sharon Renee Lloyd was his specific power of attorney, that he had the right to an attorney, and that she was able to file on his behalf. Those statements indicate that he believed Sharon Renee Lloyd was representing him. She never appeared in court on his behalf, though. She never appeared in court for him. So how do you make the argument that she was representing him, filing whatever she filed on his behalf, but never appearing in court for him? How did you stretch that into your argument? The practice of law is not limited to appearing in court on behalf of someone. The practice of law encompasses preparing documents and filing documents with the court, filing legal documents. And that's what she did in this case. There's also some indication in the record that she was advising Mr. Boone, particularly because he indicated in his motions to appeal that he had been misled by an outside source. And so, yes, while Sharon Renee Lloyd never appeared in court on his behalf, that does not mean that she was not engaging in the unauthorized practice of law and that she was not essentially representing Mr. Boone. Dependents get advice all the time from family, friends, other inmates. They're getting advice all the time. That doesn't stretch to the point of their ineffective assistance to counsel or improperly representing. I'm not sure I understand the stretch from one person giving solicited or unsolicited advice or filing paperwork in the court amounts to the argument that you're making. I agree that people can get advice from family and from friends, but this goes beyond mere advice. I mean, Sharon Renee Lloyd filed an appearance. That is something attorneys do. She called herself his specific power of attorney, in fact, and we have no evidence whether she was actually his power of attorney or not. She said that she was appointed to file documents on Mr. Boone's behalf. These are all things that attorneys do, and getting advice from family or friends is one thing. But, you know, if you get advice from your grandma, she's not filing a treason and genocide complaint on your behalf. You're just talking to her. In this case, Sharon Renee Lloyd filed documents on Mr. Boone's behalf, and they were purportedly legal documents. And so that is engaging in the unauthorized practice of law. There are multiple cases out there saying that filing legal documents when you're not an attorney is engaging in the unauthorized practice of law. And obviously, if you're not representing yourself in filing those documents. And so in this case, if Sharon Renee Lloyd was engaging in the unauthorized practice of law, what was she doing? She was representing Mr. Boone. Carlosi, you're not talking about ineffective assistance of counsel. That's not the issue here. Aren't you just saying that the filing of the treason complaint, for example, should have been a red flag to the court that it should admonish the defendant? That's your argument here, is admonishment. Correct. For the waiver of counsel argument, that is our position that these documents should have prompted the court to ask who this woman was to ask why she was filing a special appearance. What it what Mr. Boone what Mr. Boone's believed it meant she meant when she said she was his specific power of attorney, in fact, appointed to file documents on his behalf. Are you familiar with Feretta versus California? Yes. And what is your understanding of that case? What do you what do you mean? Well, doesn't that set forth the kinds of questions that a court should ask when making a determination as to whether defendants gives a knowing and voluntary waiver of right to counsel? Yes. And then Illinois specifically has Illinois Supreme Court Rule 401, which enumerates exactly what the court must admonish the defendant about and make sure that he understands. Well, Feretta actually goes a little beyond Rule 401 in that it talks about the educational background of the defendant. It looks at the defendant more closely than our Rule 401, doesn't it? Yes. Yes. It. And this is something that happened in Jones, which is the case that the state cited. It was a Seventh Circuit case. And it was another case where Sharon Renee Lloyd was filing documents on someone else's behalf. In that case, the defendant, well, the court did kind of go more in depth into, I guess, the defendant's qualifications for representing himself. United States versus Jones is very similar to this case here. Would you agree? I think that it's very superficially similar, but I think that... How would you distinguish it? Because everything that Mr. Boone argues that this court should have done to ensure that his waiver was actually knowing and voluntary was done in Jones. Jones told the court, I overstand all of these admonishments. The court said, well, what do you mean by that? Can you explain what you mean? And after the court pressed him enough, the defendant finally said, it means being aware. So that meant that the court understood what Jones meant by using that word. But we don't know what Mr. Boone meant by using that word because the court in this case never inquired into that. And then when Sharon Renee Lloyd filed documents on the defendant's behalf in Jones, the court said, this woman is not authorized to file anything on your behalf. Again, that was not done in this case. While at sentencing, the court did indicate for the record that it had discovered Sharon Renee Lloyd was not licensed to practice law in Illinois. That didn't necessarily inform Mr. Boone that she couldn't file anything on his behalf, that she had no authority to do that, and that any filings by her would be disregarded. And when after some of these documents, similar documents were filed in Mr. Jones's case, I think the court and the government both expressed some concern about whether his waiver was actually knowing and voluntary because the filings were incoherent and didn't really make sense. And so the court then provided a second phoretic colloquy. And that is when the defendant in that case said, used I overstand. And again, that's when the court inquired, well, what do you mean by that? And so in Jones, the court took substantial steps to ensure that that defendant's waiver was knowing and voluntary, but none of that happened here. This was a very typical colloquy of the 401 admonishments, and in a normal case, that would be fine. But this is not a normal case, and there were several instances that should have alerted the court that there was something else going on here. Just like in Jones, these same things alerted the court, hey, there's something going on here. All right, thank you. Justice Walsh, any questions? No questions. Justice Vaughn? No questions, thank you. All right, Ms. Harrington, it's your opportunity to begin your opening remarks. But before I let you do that, even though the timer is going to go on, I'd like you to talk about U.S. v. Jones, since that was cited by the state. And I think there are some distinguishing characteristics, as Ms. Carlozzi has mentioned. Can you talk about U.S. v. Jones? Absolutely, Your Honor. Thank you, and good morning to Your Honors and counsel. My name is Lynn Harrington, and I represent the people of the state of Illinois. Justice Cates, simply because the Jones case had some additional facts not present in this case, does not in any way indicate that the defendant did not knowingly, intelligently, and voluntarily waive his right to counsel. Jones didn't set as a requirement that the trial court must say, well, what do you mean by overstand? And I assume counsel would agree with me, because on page 25 of her brief, she literally says that the overstand responses of defendant were nonsense. And that is her exact word, Your Honor. But that doesn't help you. If it says nonsense, that's not a knowing and voluntary yes. Actually, Your Honor, it is because it constitutes gamesmanship, as the Slabon First District Court said. And other courts have said, if you're using this as a trial strategy, this sovereign citizenship, then that actually shows that you are intelligently, knowingly, and voluntarily waiving your right to counsel. And that's exactly what defendant did here. In fact, we have direct evidence from defendant in his motion to appeal, where he specifically said, wow, this was a strategy. My fellow prisoners and I, we engage in this strategy, and it didn't work out. So, gee, can I have a do over? But he completely admitted that this was his own personal choice. We know on the record that the trial judge Griffith gave a 401 admonishments. But what I'd like to also discuss, Your Honors, is what I think, what the people think is the most important issue in this case. And that's the very last issue, where defendant claims that in order to uphold the integrity of the judicial system, this case needs to be reversed and remanded for a new trial. And then within that argument, on page 55, counsel goes so far as to allege that the trial judges Griffith and Correll failed to uphold the integrity of the judiciary. And they showed a deliberate indifference to defendant's right to represent himself. This is a pretty heavy allegation, Your Honors, especially given the fact that looking at the record as a whole, like the Slobon Court, these trial judges bent over backwards to be fair to defendant, to give him his day in court and to make sure that his constitutional rights were not violated. How many times did they admonish the defendant under Rule 401? Judge Griffith admonished, did the specific elements of 401 one occasion, Your Honor, but on several different occasions pre-trial, he repeatedly asked, do you want an attorney? Do you want an attorney? And then he would, the defendant would say such things as, I don't want anyone representing my person besides myself. I will be represented, my person in all caps. I am waiving the benefit of the court. These are very equal to the sovereign citizenship claims that courts have repeatedly held are, as I believe the second district said in Branfield, they waste the time and resources of the litigants, the judges, law clerks, librarians, and the court clerk's office. And for that reason, they can be civilly sanctioned. But the court only admonished under Rule 401k one time, early in the proceedings, right? Before trial, Your Honor, yes. At the start of the jury trial, the court, page R65, asked if they were talking about the right to sever accounts. And the court said, Mr. Boone, do you understand that? He says, no, I do not understand. And then they were talking about the severancing of accounts. And Mr. Boone says, it's the nature and the Sixth Amendment to the Constitution give me the right to ask the court to explain any nature, the nature and cause of any action against me. And upon my request, the court has to do that. The fact that he invokes the Sixth Amendment there just before trial, do you think that he was entitled to another admonishment there? Because the court goes on to ask him, which amendment is this? He says, the Sixth Amendment. And the court says, to which constitution? Which the defendant says the Constitution of the United States. And the court says, well, my copy doesn't have that in there, but about admonishing you about that. This is all as trial was about to begin, and the court is seemingly dismissive of the defendant's request for a Sixth Amendment opportunity. And I know that you don't have this in front of you, but what would you say to that? Your Honor, the people would respond to that. That first, the issue of whether the defendant understood the severance issue. Defendant did not raise an appeal. So that claim is not before this court. I'm talking about the Sixth Amendment issue. Yes, I was just going to follow up the second part of my answer. I apologize, Justice Cates. With regard to defendant's reference to the Sixth Amendment, he had already, as we said, been clearly admonished under 401. He'd been asked many times. He answered, I overstand, which in the Silbon case, the court cited United States v. Gary, 11th Circuit of 2008. It is possible for a valid waiver of counsel to occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled. So he already did that. And even asking about severance, that's not a changed circumstance, Your Honor. In fact, the Illinois Supreme Court has specifically set out what constitutes a substantial change in circumstances such that a defendant would need to be readmonished. And those are whether there was a lengthy delay in the trial, whether there was newly discovered evidence, if there were new charges brought against the defendants, or if the defendant himself requested it. None of those things occurred, Your Honor. There was no substantial change in circumstances. And certainly not what defendant alleges that the filing of Sherron Renee's special appearance or her treason or genocide or any of her other documents did not constitute a substantial change in circumstances. Because as we all know, Sherron Renee was not a licensed attorney in Illinois. She never represented the defendant. She never showed up in court to represent the defendant, which actually is quite important. Counsel said originally that it's not necessary because you can, as a licensed attorney, file documents on behalf of your client. That is, of course, true. But in a felony criminal trial, you have to be present in court to actually be representing your client. She never did that. Shouldn't that have raised a red flag to the court to ask, to make some inquiry into whether or not this is a licensed attorney and whether or not this person is representing you? I mean, this defendant had an attorney at one point in time. Yeah, respectfully, Your Honor, I do not think that the onus here was on the trial court for several reasons. First, because the record reflects when the defendant initially fired his private counsel, private counsel was having a discussion with the trial court saying he wants to represent himself. He isn't thinking of jurisdiction over him. He believes in maritime law. And then they also said this actually is a very big movement going in Illinois right now. So the trial court was on, you know, aware of the fact that this, these nonsensical proceedings were defendants were trying to obstruct justice in their criminal cases throughout the state of Illinois. So, and second, it's also well said a lot that if a defendant chooses to go pro se, he's held the exact same standards as an attorney. So if he's held to those standards, if he wanted to make the trial court aware of them, then he needed to notice them up. But he never did. But in the case you cite, U.S. v. Jones, which is a federal case, they admonished the defendant several times. They don't do one and done. They have two different judges and they admonish him on several occasions. Yes, Your Honor, that's completely accurate. However, Illinois Supreme Court Rule 401 does not require more than one admonishment. What it requires, though, is a knowing involuntary waiver. Yes. How do you know if you have a knowing involuntary waiver if you're one and done? Well, I don't think the issue is, I mean, I think that a trial court could go through the motions of mentioning 401 over and over and over and not subjectively determine whether the waiver was knowing involuntary. I don't think the number of times admonishments is really key here. I think what is key here is that the defendant, I'm sorry, the trial judge looked at the defendant subjectively. He knew that he could tell. We know from the record he was 28 years old, so he could tell he was an adult. We also know from the record that because he was charged with unlawful use of a weapon by a felon, that he was a felon and had at least one prior felony. And with regard to that, Your Honor, then the trial court would know that he is familiar with the legal system. And in her reply brief, counsel brings up a whole new argument, which people believe is inappropriate, but they say that because defendant pled guilty, that lessens his legal knowledge of the legal system. Counsel has absolutely no authority for that proposition whatsoever, because we know before the defendant pled guilty, they're more likely than not, he didn't walk into court one day and plead guilty. There were several proceedings that led up to that plea. So the trial court also knew that he was a veteran to the system. And based on that, and based on knowing that this was a new big movement in Illinois, the defendants were trying to obstruct justice, which is exactly what he did throughout the proceedings. Judge Griffith properly found that the defendant's waiver of his right was knowingly and voluntarily given. What about the fact that, or do you agree that the judge incorrectly advised the defendant of the maximum limits? Yes, Your Honor. As the people noted in their brief, there is only, you only need substantial compliance with Rule 401. And if there is any, anything lacking, then the defendant has to show that he's prejudiced by that. And here, defendant alleges that he did not receive the information that he could have been sentenced from 25 years to natural life. However, excuse me, since he was not sentenced that, he didn't show any prejudice, and therefore there was substantial compliance with Rule 401. Okay. Does that conclude your remarks, or did you have a closing remark? No, Your Honor. For all the other arguments, I would, people would stand on their brief and respectfully request that this court affirm the judgment of the court below. Okay, Justice Welch, any questions? No questions. Justice Vaughn? No questions. All right. Ms. Carlosi, you have some rebuttal? Yes. Thank you. I know that this court and that other courts are very wary about sovereign citizens and the games that they play with courts in this state, in this country. And that's exactly what Slobon recognized. And I do think that these courts should be concerned with that. But this is not your typical sovereign citizen case. In fact, I would argue that this case isn't really about Mr. Boone being a sovereign citizen at all. But it's about the fact that there was an outside source, a non-attorney, engaging in the unauthorized practice of law, who misled Mr. Boone, and that led him to mistakenly waive his right to an attorney. Looking at the record as a whole, we see that something happened during the pendency of this case to change Mr. Boone's approach. A brief timeline shows that in 2010, 2011, 2014, Mr. Boone pled guilty to felony offenses. That means that he recognized the jurisdiction of the criminal courts over him specifically. On September 19, 2020, he found himself involved in this argument at Harris Justice House. On February 12, 2021, Mr. Boone turned himself in. If Mr. Boone, in February 2021, didn't believe that the courts had jurisdiction over him, he would not have turned himself in. Mr. Boone was then appointed a public defender, and three months later, he hired private counsel. Four months later, Mr. Boone formally fired his private attorneys, and I think about two weeks after that, Mr. Boone waived his right to counsel. Ten days after that, Sharon Renee Lloyd filed a special appearance in this case, referring to herself as Mr. Boone's specific power of attorney in fact, and claiming she'd been appointed to file on his behalf. Then, Mr. Boone did not meaningfully participate in his jury trial, and he was found guilty of all three counts. I'd like to note that Mr. Boone's private attorneys did file an answer before he fired them, and in their answer, they did indicate that they were planning on asserting the affirmative defense of self-defense. And so, we don't know what the circumstances of that defense would have been, but I just think that it shows that the fact that Mr. Boone did not meaningfully participate in his trial was honestly just terrible. And then, shortly after he was found guilty, Sharon Renee Lloyd filed a treason and genocide complaint on Mr. Boone's behalf. And then, on December 21st, 2021, the sentencing court noted the complaint, but said it would not consider it because Sharon Renee Lloyd was not a licensed attorney. Then, when Mr. Boone essentially said, Sharon is my attorney, because he said, Sharon is my specific power of attorney, I have the right to an attorney, she can file on my behalf, the court did nothing. And then, on January 4th, Mr. Boone filed an appeal, saying he was misled by an outside source, and on January 7th, he filed another motion to appeal, saying that he had mistakenly waived his rights due to the influence of this outside source. And so, Mr. Boone did not have these beliefs when this case was started. So, there was something going on in this case. Mr. Boone is not like Slaban, where, from the get-go, he started playing games with the court. He was not like Jones, where, again, from fairly early on, he was espousing his beliefs. Something happened in this case, and the record shows that what happened is Sharon Renee Lloyd. I recognize, and Mr. Boone recognizes, that this is not one of the situations in which the Supreme Court said that the continuing waiver rule does not apply, but that's because this has never happened. I have never seen a case where a criminal defendant represented himself pro se, but another person was filing documents on his behalf, and then he alleged that he was misled by that person. And so, it would make sense that the Supreme Court has never said that this is a situation in which the continuing waiver rule does not apply, because this seems to be a case of first impression. As for Mr. Boone's last argument, that this court should reverse to uphold the integrity of the judicial system, Mr. Boone was found guilty of attempt murder after a 49-minute jury trial. That jury trial was peppered with errors on the state's part. That shows that the state really wasn't taking this seriously. The state didn't even ask for the record to reflect who Paris Jelks identified as the person who shot her. The state never asked Paris Jelks' mother to identify the person who she saw pull out a gun and fire the gun. And based on their descriptions, they described two separate articles of clothing. And so, it's not even clear from the record if they identified the defendant. And typically, that is something the state does. You ask the witness, do you see this person in court? And the person points them out. And the judge asks the judge for the record, will you reflect an in-court identification of the defendant? That's typical. The state here didn't... Ms. Carlosi, I need to stop you. Your time has expired. I appreciate it. This is an interesting case, obviously, for both of you. But the time has expired, and we did not grant additional time. So, I have to stop you. This matter... Justice Welsh, do you have any questions? No questions. Justice Vaughn? No questions. All right. This matter will be taken under advisement. We'll issue an order in due course. Thank you both for your arguments here today.